

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TEXAS GRAND PRAIRIE HOTEL | § | |
| REALTY, LLC, ET AL., | § | Bankruptcy No. 10-43242-rfn11 |
| | § | |
| Debtors. | § | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - | § | |
| | § | |
| WELLS FARGO BANK, NATIONAL | § | |
| ASSOCIATION, AS TRUSTEE FOR | § | |
| THE MORGAN STANLEY CAPITAL | § | |
| I INC. COMMERCIAL MORTGAGE | § | |
| PASS-THROUGH CERTIFICATES | § | |
| TRUST, SERIES 2007-XLF9, | § | |
| ACTING BY AND THROUGH ITS | § | |
| SPECIAL SERVICER, BERKADIA | § | |
| COMMERCIAL MORTGAGE LLC, | § | |
| | § | |
| Appellant, | § | |
| | § | District Court Case |
| VS. | § | No. 4:11-CV-390-A |
| | § | (consolidated with |
| TEXAS GRAND PRAIRIE HOTEL | § |   No. 4:11-CV-401-A) |
| REALTY, LLC, ET AL., | § | |
| | § | |
| Appellees. | § | |

MEMORANDUM OPINION
and
ORDER

Before the court for decision are the above-referenced
consolidated appeals by Wells Fargo Bank, National Association,
as Trustee for the Morgan Stanley Capital I Inc. Commercial
Mortgage Pass-Through Certificates Trust, Series 2007-XLF9,
acting by and through its special servicer, Berkadia Commercial
Mortgage LLC ("Lender" or "Appellant"), from (1) the order signed
by the bankruptcy court April 28, 2011, confirming the modified
amended joint plan of reorganization ("Plan") of Texas Grand
Prairie Hotel Realty, LLC, Texas Austin Hotel Realty, LLC, Texas

Houston Hotel Realty, LLC, and Texas San Antonio Hotel Realty, LLC ("Debtors" or "Appellees"), and (2) the order signed by the bankruptcy court on April 28, 2011, denying the motion of Lender objecting to, and to strike, the designation by Debtors of Lewis E. Robichaux IV ("Robichaux") as an expert witness. Debtors are the appellees in the consolidated appeals. The court has concluded that the rulings of which Appellant complains should be affirmed.[1]

## I.

### Nature of the Case and Background

Lender's predecessor-in-interest loaned $49,000,000 to Debtors in 2007 for use by Debtors to acquire and renovate four hotels in Texas. The loan was secured by deeds of trust and security agreements that encumbered the hotels and substantially all of Debtors' other assets. The loan was not repaid upon its maturity in April 2010. Debtors filed their bankruptcy petitions in May 2010, which were ordered jointly administered.

Lender's appraiser valued the real and personal property that was serving as security for the indebtedness at $39,080,000. Debtors agreed to the valuation; and, the parties stipulated that Lender would have a secured claim in bankruptcy in the amount of $39,080,000, plus the value of the cash collateral to be determined by the bankruptcy court. The balance of Lender's

---

[1]Debtors, as appellees, filed a motion to dismiss the consolidated appeals for equitable mootness. Because of the court's decision to affirm the rulings of the bankruptcy court, the issues raised by the motion to dismiss need not be addressed by the court. In effect, the motion to dismiss for equitable mootness is, itself, moot.

claim–approximately $12,000,000 before consideration of the cash collateral--was treated as an unsecured claim.

The Plan divided creditors and interest holders into classes, and specified the treatment of each class. The Plan's class provisions relevant to the issues in the instant appeal are as follows:

Class 2 consisted of the secured claim of Lender, other than its interest in cash collateral. Debtors were to pay Lender $39,080,000 on Lender's secured claim over a seven-year period, with the first eighty-three payments being made monthly based on principal and interest amortized over a twenty-year period, and with the eighty-fourth payment being a balloon payment of the unpaid principal amount and accrued and unpaid interest. Lender was to earn interest on the unpaid balance of that indebtedness at the rate of 5% per annum.

Class 4 was a secured claim of LodgeNet Interactive Corporation. The Plan provided that this claim, amounting to $10,231.78, would be paid within ten days after the effective date of the Plan. LodgeNet was impaired under the Plan, making it eligible to vote on the Plan.

Class 5 included secured claims for ad valorem taxes. The plan provided for payment of the tax claims in two installments, one within ten business days after the Plan became effective, and the other no later than June 30, 2011. The taxing authorities were impaired under the Plan, making them eligible to vote on the Plan.

On February 17 and 18, 2011, Bankruptcy Judge Russell F. Nelms held a two-day hearing on confirmation of the Plan, at which he also received evidence bearing on Lender's motion objecting to, and to strike, the designation by Debtors of Robichaux as an expert witness.[2]   R. at 3460-3731; 3764-4006.[3] Debtors called a number of witnesses who, directly or indirectly, supported Debtors' contention that the Plan was feasible and proposed in good faith and that the interest rate of five percent proposed to be paid to Lender under the Plan was an appropriate rate.  Testifying on behalf of Lender was an expert, Richard Frrell ("Ferrell"), who supported Lender's contentions that the Plan was not feasible and that the five-percent rate of interest was insufficient, considering all of the factors that determine an appropriate cramdown rate.

On February 22, 2011, Judge Nelms devoted most of an afternoon to hearing argument of counsel for Debtors and Lender in support of their respective positions on, *inter alia*, feasibility of the Plan, Debtors' good faith in proposing the Plan, appropriateness of the five-percent interest rate, and whether Robichaux's expert opinion as to an appropriate interest rate should be considered by the judge.  R. at 12262-12310.

Judge Nelms conducted a status conference by telephone on April 18, 2011, during which he informed the parties that he

_____

[2] Judge Nelms was new to the case in February 2011, having inherited it, at least temporarily, from the other active bankruptcy judge in the Fort Worth Division.

[3] The "R. at ____" references are to the fifty-one-volume record filed June 10, 2011, in the district court as the record on appeal in No. 4:11-CV-390-A before consolidation.

would require certain modifications to be made in the Plan, as then proposed, before he would be willing to confirm it, and that if the changes were not made he would deny the Plan.   R. at 12311-19.   Debtors thereafter informed Judge Nelms that the modifications he required in the Plan had been made.[4]

At a hearing conducted telephonically by Judge Nelms on April 28, 2011, he announced his findings and conclusions as to, and rulings on, feasibility of the Plan, the issue of whether the Plan was proposed by Debtors in good faith, appropriateness of the five-percent interest rate, the qualifications of Robichaux to provide an expert opinion as to the appropriate rate, and the propriety of the equity sale.   R. at 3424-59.   Judge Nelms's findings and conclusions were detailed, and, to the extent pertinent to these appeals, will be mentioned again at a later point in this memorandum opinion.

On April 28, 2011, Judge Nelms signed his order confirming the Plan, R. at 9-17, and his order denying Lender's objection to, and motion to strike, Debtors' designation of Robichaux as an expect witness, R. at 3196-97.   Particularly pertinent to the issues presented by the consolidated appeals are the following findings and conclusions contained in the order confirming the Plan.

> 5.   The Debtors have proposed the Plan in good faith and the Plan is not forbidden by any applicable bankruptcy or nonbankruptcy law.   The Plan complies

---

[4]The modifications made by Debtors at the direction of Judge Nelms were discussed during a hearing held by Judge Nelms telephonically on April 22, 2011. Tr. of Apr. 22, 2011 Hr'g, Docket Entry 368 in Bankr. No. 10-43242-rfn11.

with all applicable provisions of the Bankruptcy Code,
and the Debtors have complied with all applicable
provisions of the Bankruptcy Code. . . .

. . . .

9.   With respect to each Class that has rejected
the Plan, the Court finds that the Plan does not
discriminate unfairly and that the Plan is fair and
equitable, with respect to such Class, and that all
requirements for confirmation of the Plan under Section
1129(b) of the Bankruptcy Code with respect to such
Class are met.   Accordingly, the Court may confirm the
Plan notwithstanding the rejection of the Plan by
certain Classes.

10.   All requirements for the confirmation of the
Plan imposed by the Bankruptcy Code, including
specifically Sections 1129(a) and 1129(b) of the
Bankruptcy Code, have been satisfied and met.   All
factual and legal requirements for the confirmation of
the Plan have been satisfied and met.

R. at 12-13.   The order denying Lender's motion pertaining to

Robichaux recited that the motion was being denied "[f]or the

reasons stated on the record by the Court on April 28, 2011

. . . ."   R. at 3196.

II.

Issues Presented on Appeals

Appellant described in its opening brief its

characterization of the issues presented on the consolidated

appeals as follows:

1.   Under the Supreme Court's decision in Till v. SCS
Credit Services, Inc., 541 U.S. 465 (2004), may a
bankruptcy court approve the restructuring of a
secured creditor's claim at an interest rate of 5%
where undisputed evidence demonstrates that the
market rate of interest for much less risky loans
is significantly higher?

2.   Did the Bankruptcy Court properly permit Robichaux
to present expert testimony on interest rates that
ignored market evidence and took the form of a

6

subjective "mosaic" analysis that could not be
duplicated?

3.    Did the Debtors satisfy their burden to demonstrate
      that they proposed their reorganization plan in good
      faith where the Debtors:

      (a)    requested that a creditor with no security
             interest in their assets amend its unsecured
             proofs of claim to assert secured claims;

      (b)    reserved funds for the payment of *ad valorem*
             taxes but then refused to pay the taxes when
             due, so that the taxing authorities were
             "impaired" creditors entitled to vote on the
             Debtors' plan; and

      (c)    conducted a sale process for the membership
             interests in the Debtors' restructured
             business that involved contacting only 19
             potentially interested parties, with no
             advertising?

Br. of Appellant at 1-2.

Appellees recharacterized in their brief the issues

presented by the appeals as follows:

First, did the Bankruptcy Court commit clear error in
concluding, through multiple and extensive findings of
fact, and after an extensive evidentiary hearing
including expert witnesses, that the Debtors met their
burden to confirm their Plan: (i) as having been
proposed in good faith; and (ii) as containing an
appropriate cramdown rate of interest of 5%?  Second,
did the Bankruptcy Court abuse its discretion by
finding Robichaux was qualified to offer an expert
opinion in connection with the appropriate rate of
interest to be paid to the Appellant under the
Bankruptcy Code?

Br. of Appellees at 1.

The court considers that the issues to be decided are:

First Issue:  Did the bankruptcy court commit

clear error in finding that Debtors met their burden to

show that the Plan should be confirmed as having been

7

proposed in good faith and as containing an appropriate
cramdown rate of interest of 5%?

Second Issue:  Did the bankruptcy court abuse its
discretion by permitting Robichaux to provide an expert
opinion that the interest rate contained in the Plan
was an appropriate rate to be paid to Lender?

III.

Analysis

A.   Standard of Review

To the extent the appeal presents questions of law, the
bankruptcy court's judgment is subject to de novo review.
Pierson & Gaylen v. Creel & Atwood (In re Consolidated
Bancshares, Inc.), 785 F.2d 1249, 1252 (5th Cir. 1986).  Findings
of fact, however, will not be set aside unless clearly erroneous.
Bankr. R. 8013.  A finding is clearly erroneous, although there
is evidence to support it, when the reviewing court on the entire
evidence is left with a definite and firm conviction that a
mistake has been committed.  Memphis-Shelby County Airport
Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.),
783 F.2d 1283, 1287 (5th Cir. 1986).  The mere fact that this
court would have weighed the evidence differently if sitting as
the trier of fact is not sufficient to set aside the bankruptcy
court's order if that court's account of the evidence is
plausible in light of the record viewed in its entirety.
Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985).
In evaluating whether a finding of the bankruptcy court is

8

clearly erroneous, "due regard shall be given to the opportunity
of the bankruptcy court to judge the credibility of the
witnesses." Bankr. R. 8013.

B.    The Five Percent Interest and Robichaux Issues

The majority of Appellant's brief on appeal is devoted to
the proposition that the five-percent rate of interest
contemplated by the Plan does not comply with the "fair and
equitable" requirement of 11 U.S.C. § 1129(b)(1). Woven into the
arguments on that point is Lender's contention that the
bankruptcy court abused its discretion by permitting Robichaux to
provide expert witness evidence as to the interest rate that
would satisfy the "fair and equitable" requirement.

In addition to the findings inherent in the findings and
conclusions expressed by the bankruptcy court in the order
confirming the Plan, <u>supra</u> at 5-6, Judge Nelms made very specific
findings and conclusions on those subjects at the April 28, 2011,
hearing. R. at 3441-47. Included were the following:

> Mr. Robichaux is qualified to testify on the topics of
> interest rates and the adjustment of interest rates to
> address additional risk factors.

R. at 3442.

> Robichaux properly interpreted *Till*[5] and properly
> applied it.

R. at 3446 (footnote reference added).

> [T]he Robichaux opinion is more consistent with [the
> court's] own understanding of *Till*, and . . . the

---

[5]<u>Till v. SCS Credit Servs., Inc.</u>, 541 U.S. 465 (2004).

9

> Debtors' rate is fair and equitable under Section
> 1129(b)(2).

R. at 3447.

The findings and conclusions set forth immediately above
were a part of a lengthy discussion by Judge Nelms of the reasons
why he thought Robichaux was qualified to give the opinions he
gave, why he was unwilling to rely on Ferrell's opinion, and why
he concluded that the five-percent interest rate contemplated by
the Plan was fair and equitable.  While the evidence considered
by the bankruptcy court provided basis for plausible arguments on
both sides of the five percent/Robichaux issues, the court
concludes that the bankruptcy court did not make any legal error
in its findings, conclusions, and rulings on those issues.  And,
after reviewing the evidence, this court is unable to conclude
that any of the bankruptcy court's findings of fact as to the
subjects being discussed under this subheading were clearly
erroneous.

C.   The Bankruptcy Court's Findings and Conclusions That
     the Plan Was Proposed in Good Faith

Lender's arguments that the Plan was not proposed by Debtors
in good faith has three aspects:

> First, that Debtors improperly caused a creditor by the
> name of LodgeNet to be treated in the Plan as a secured
> creditor to be paid at a future date, rather than to assume
> the contract between Debtors and LodgeNet, thus causing
> LodgeNet to have the right to vote on the Plan;

Second, that Debtors intentionally withheld payment to tax creditors, instead providing in the Plan that the past-due tax obligations were to be paid in two installments, the second payment to be made months after confirmation of the plan, thus causing the tax creditors to be impaired, meaning, in turn, that they would have a right to vote on the Plan; and

Third, that the equity-sale process that led to Debtors' successful equity purchase was not a meaningful attempt to maximize the equity value for the benefit of the bankruptcy estate.

As previously noted, the bankruptcy court found in the order confirming the Plan that Debtors "proposed the Plan in good faith" and that the "Plan complies with all applicable provisions of the Bankruptcy Code, and the Debtors have complied with all applicable provisions of the Bankruptcy Code." Supra at 5-6.

Judge Nelms elaborated at length on the good-faith issue when he announced his findings and conclusions on April 28, 2011. R. at 3428-38, 3447-53. The bankruptcy court did not find necessary to deal specifically with the LodgeNet issue inasmuch as the LodgeNet claims in Class 4 were subject to a pending claim objection filed by Lender. R. at 3428. As to the Class 5 claims of the property tax creditors, the bankruptcy court found that the six-month delay in the payment of a $350,000 part of that claim was a meaningful impairment, R. at 3430, and that "Debtors had a valid business justification in proposing to defer payment

11

of some of the tax claims in Class 5," R. at 3433. The
bankruptcy court found credible Debtors' explanation as to why
the full amount of the tax claim could not be paid at an earlier
date. Id. Also, the bankruptcy court found that "Debtors'
proposal to delay one-half of the payment to Class 5 is not
motivated by bad faith, but instead a good faith desire to
reorganize and continue operating the hotels in the interest of
paying creditors." R. at 3437-38.

The bankruptcy court disagreed with the contention of Lender
that the equity interest was not sufficiently marketed. R. at
3447-52. The thrust of Judge Nelms's April 28, 2011 remarks on
the subject of the sale of the equity was that the procedures
that were followed resulted in a fair and equitable new value
contribution, reasonably equivalent to the value received in
return, when considered together with the increase to
approximately $2,700,000 by reason of the modifications required
by Judge Nelms. Id. Judge Nelms found that Bridge "developed a
logical and reasonable strategy for reaching . . . parties most
likely to be interested in the deal" and "exercised reasonable
discretion in marketing the asset." R. at 3450.

Judge Nelms's thorough, and well-reasoned, analysis and
disposition of the aspect of Lender's contention that Debtors did
not satisfy their burden to demonstrate that they proposed the
Plan in good faith is amply supported by the evidentiary record
upon which the bankruptcy court acted. Therefore, there is no
basis for a conclusion by this court that any of the findings of

the bankruptcy court on the subjects being discussed under this subheading were clearly erroneous; and, the court is not persuaded that the bankruptcy court committed any error of law in the conclusions it reached and rulings it made on those subjects.

D.    Conclusion and Order

For the reasons given above, the court cannot conclude that the bankruptcy court committed clear error in finding that Debtors met their burden to show that the Plan should be confirmed as having been proposed in good faith and as containing an appropriate interest rate of five percent, and cannot conclude that the bankruptcy court abused its discretion by permitting Robichaux to provide an expert opinion that the interest rate contained in the Plan was an appropriate rate to be paid to Lender or committed any error of law in entering the orders from which Lender has appealed.    Therefore,

The court ORDERS that the rulings made by the bankruptcy court in the two April 28, 2011 orders from which Lender has appealed be, and are hereby, affirmed.

SIGNED November ___8___, 2011.

_____
JOHN McBRYDE
United States District Judge